```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION




UNITED STATES OF AMERICA,

              Plaintiff,
                                        HONORABLE NANCY G. EDMUNDS
     v.
                                        No. 21-cr-20285
LYNNIE ROBERSON,

              Defendant.
_____/



                    ARRAIGNMENT AND MOTION HEARING
                         Via Video Conference


           Detroit, Michigan - Thursday, June 17, 2021



Appearances:

Jerimiah Smith
United States Attorney's Office
Eastern District of Michigan
211 W. Fort, Suite 2100
Detroit, MI 48226
Email: jerimiah.smith@usdoj.gov
On behalf of Plaintiff

Maria Mannarino
500 Griswold Street, Suite 2430
Detroit, MI 48226
Email: mmannarino@comcast.net
On behalf of Defendant

                               -   -   -

             Suzanne Jacques, Official Court Reporter
                email: jacques@transcriptorders.com
```

Arraignment and Motion Hearing
Thursday, June 17, 2021

# I N D E X

- - -

| Proceeding | Page |
|---|---|
| Proceeding | Page |
| Arraignment | 4 |
| Motion for Revocation of Detention Order | |
|   Argument by Ms. Mannarino | 5 |
|   Response by Mr. Smith | 8 |
|   Ruling of the Court | 18 |
| Certificate of Court Reporter | 18 |

| | |
|---|---|
| 1 | Detroit, Michigan |
| 2 | Thursday, June 17, 2021 |
| 3 | 1:30 p.m. |
| 4 | - - - |
| 5 | THE CLERK: Court calls 21-20285, United States |
| 6 | of America vs. Lynnie Roberson. This is the date and time |
| 7 | set for a motion for revocation of detention order. |
| 8 | MR. SMITH: Good afternoon, Your Honor. Jerimiah |
| 9 | Smith on behalf of the United States. |
| 10 | And good afternoon. Maria Mannarino on behalf |
| 11 | of Mr. Lynnie Roberson who appears via technology from the |
| 12 | Saginaw County Jail. |
| 13 | Mr. Roberson, will you please identify yourself? |
| 14 | THE COURT: Hang on just a second. |
| 15 | (Brief pause.) |
| 16 | THE COURT: Before we begin, let me indicate |
| 17 | that our chief judge has found that this felony proceeding |
| 18 | cannot be held in person without serious jeopardy to public |
| 19 | health and safety. I further find that the hearing cannot |
| 20 | be delayed without potential harm to the interests of |
| 21 | justice, so we are proceeding by Zoom in this case. |
| 22 | Ms. Mannarino, have you had a chance to discuss |
| 23 | that with Mr. Roberson? |
| 24 | MS. MANNARINO: Yes, I have had an opportunity |
| 25 | to discuss with Mr. Roberson proceeding by Zoom. I believe |

1   that he is comfortable and consents to proceeding by Zoom
2   technology.
3                THE COURT:  It's acceptable to him?
4   Mr. Roberson, if you can tell me yourself, is it acceptable
5   to you to proceed via Zoom rather than in person?
6                THE DEFENDANT:  Yes.
7                THE COURT:  Okay.  This is a motion to revoke a
8   detention order.  Ms. Mannarino, would you like --
9                Do we need arraignment first?
10               THE CLERK:  We don't need a signed
11  acknowledgment, but if he wants to give his permission to
12  her on the record and she signs his name, we can proceed
13  that way.
14               MS. MANNARINO:  I did speak with Mr. Roberson
15  earlier.  I did execute the acknowledgment and forwarded an
16  email to the Court and to the prosecutor about a half hour
17  ago.  I don't know if you've received that, but you should
18  have it by now.
19               MR. SMITH:  I did receive my copy, Your Honor.
20  Thank you, Ms. Mannarino.
21               THE COURT:  Okay.  Ms. Mannarino.
22               MS. MANNARINO:  So I have had an opportunity to
23  go over the superseding indictment with him.  He does have a
24  copy of that superseding indictment.  I have gone over the
25  acknowledgment with him, and he has given me his consent to

1   execute the acknowledgment. I have forwarded it to the
2   Court. If the Court doesn't have it, I can do that again.
3               THE CLERK: I do now have it, Judge.
4               THE COURT: Okay. Then, for purposes of the
5   arraignment it's been acknowledged you stand mute and waive
6   the reading?
7               MS. MANNARINO: We do. Thank you.
8               THE COURT: Thank you. And would you like to
9   speak to the motion?
10              MS. MANNARINO: Yes.
11              As I was saying, just by way of a brief history
12  of Mr. Roberson, he's 38 years old. He was released from
13  federal prison and began a period of supervised release back
14  in, nearly four years ago, August of 2017.
15              He took advantage of everything the federal
16  prison system had to offer to turn his life around, and
17  while he has been on supervised release for nearly four
18  years, he did everything he could to prove himself worthy of
19  those opportunities. He immediately began work with an
20  automotive group, and has been steadily and gainfully
21  employed for the four years that he's been on supervised
22  release. He's completed training, he's completed truck
23  driving school, he's gotten his CDL. He has been
24  continually improving and advancing.
25              He lives with his mother who is extremely

1  supportive, he has a daughter who he not only sees
2  regularly, but he supports.  In addition, he and his mother
3  have together begun a cleaning company.
4              He is in many ways a success story because of
5  the hard work he's put into turning his life around.
6              The allegations in this matter are that about
7  two months ago, returning from a celebratory night out, I
8  believe it was a friend's birthday, police in Canton,
9  Michigan, pulled Mr. Roberson over.  I believe the police
10 thought his driving may have been erratic.  They pulled him
11 over on suspicion of drunk driving.  Following the contact
12 with the police, he was arrested and booked into the police
13 station.  While being booked at the police station, the
14 allegations are that they found a gun on him, and what can
15 only reasonably be characterized as a small amount of
16 suspected narcotics, less than the amount we normally see in
17 personal use cases.
18             He was originally charged in state court, and
19 for reasons known only to the U.S. Attorney, the matter was
20 taken over by the U.S. Attorney's Office, and he was charged
21 with being a felon in possession of a firearm.  He was
22 ordered detained, and we filed a motion for revocation of
23 that detention order.  After we filed that motion, the U.S.
24 Attorney's Office obtained a superseding indictment charging
25 him with possession of cocaine, cocaine with the intent to

1  deliver, and possession of a firearm in furtherance of a
2  drug trafficking crime.
3              Interestingly enough, and just as an aside, the
4  basis for charging this case, this possession of such a
5  small amount of suspected narcotics as a trafficking crime,
6  seems to be based on the quite remarkable notion that
7  because there did not appear to be, in the eyes of the
8  prosecution, any indicia of personal use, that, therefore,
9  it must have been for purposes of trafficking, which is
10 quite the creative argument.
11             But in any event, we don't believe the
12 superseding indictment changes the fact that this man is
13 neither a flight risk or a danger to others.  If anything,
14 if these allegations can be sustained, what it may be an
15 indication of was that this man, who has worked so very hard
16 to turn his life around, may have suffered a setback, may
17 have suffered a relapse, and I submit we don't need to lock
18 up and throw away the key of an addict who suffers a
19 relapse.
20             In fact, as the Court is well aware, relapses
21 are often an important part of the recovery process, and in
22 many cases merely further motivates someone to work even
23 harder going forward.  If such a relapse occurred, we
24 believe the more appropriate way to deal with it, and
25 especially with somebody who has worked so hard for years

1   and made such tremendous progress, the more appropriate

2   course of action would be drug treatment.

3         We are asking this Court to consider an order

4   revoking the detention order.  We don't believe that there

5   ought to be any serious concerns with dangerousness or

6   flight risk, and if there are, there are other ways to

7   address those concerns.

8         Mr. Roberson further wants me to let the Court

9   know he suffers from some health issues that we think can

10  more appropriately be dealt with outside of the marshal's

11  custody.  He has high blood pressure, which he's having a

12  difficult time controlling while he has been in Saginaw.  I

13  think he also has an issue with blood clots that we don't

14  believe is properly being dealt with.

15        So we would ask the Court for a revocation of

16  the order of detention.  We believe there are other ways

17  this Court ought to be satisfied that Mr. Roberson will

18  appear when necessary, and does not pose a danger.

19        Thank you.

20        THE COURT:  Thank you, Ms. Mannarino.

21        Mr. Smith, for the government.

22        MR. SMITH:  Yes, Your Honor.  Thank you, and

23  good afternoon again.

24        Judge, I would start with the fact that in this

25  instance there are two issues of rebuttable presumptions for

1  detention here. First, under 18 U.S.C. 3142(e)(2),
2  Mr. Roberson presents the Court with a rebuttable
3  presumption because back on March 14 of 2012, he distributed
4  crack cocaine to a confidential informant, and at that time
5  he was on bond, pretrial release, in state court for felony,
6  felon in possession of a firearm charge, as well as a felony
7  violation of the Sex Offender Registry Act in Michigan
8  charge.
9  　　　　　He later pled guilty to that delivery of crack
10 cocaine on March 14, 2012 in federal court.  As Ms.
11 Mannarino pointed out, he was released from the Bureau of
12 Prisons on that distribution of crack cocaine charge in
13 2019.  Therefore, Your Honor, it's been less than five years
14 since he was released on that charge, and the rebuttable
15 presumption applies under 3142(e)(2).
16 　　　　　The second rebuttable presumption, Your Honor,
17 falls under 3142(e)(3).  What the court looks at in that
18 instance. according to the statute, is whether the defendant
19 has been charged with certain crimes; crimes of violence,
20 drug trafficking offenses, firearms.
21 　　　　　In this instance, Your Honor, Mr. Roberson is
22 charged under the superseding indictment with two counts of
23 possession with intent to distribute.  One is crack cocaine,
24 the other is cocaine.  He is also, once again, charged with
25 being a convicted felon in possession of a firearm, and now

1    the 924(c) using and carrying a firearm in connection with
2    this drug trafficking crime.
3             So in both those instances, Your Honor, there's
4    the rebuttable presumption of detention, and counsel,
5    respectively, hasn't presented the Court with reason enough
6    to overcome those rebuttable presumptions.
7             But taking those aside, Your Honor, looking at
8    the common factors that this court considers when analyzing
9    if detention is appropriate, under 18 U.S.C. 3142(g)(1), the
10   nature and circumstances of the offense charged, again, the
11   statute asks the Court look at specific factors; for
12   example, whether there was a firearm or controlled
13   substances involved.  Again, here there were both, 7.6 grams
14   of crack cocaine, 1.5 grams of cocaine, and then a loaded
15   firearm, all of which were concealed on Mr. Roberson's
16   person, not to mention, of course, that he did this act
17   while he was on supervised release for distribution of crack
18   cocaine.
19            Does he demonstrate a serious and continuous
20   disrespect for the law based on these actions?  Absolutely.
21            When we look at the second factor under (g)(2),
22   the weight and dangerousness of Mr. Roberson as well as his
23   risk of flight, Your Honor, when looking at his history,
24   yes, as Ms. Mannarino mentioned, he's 38 years old, but has
25   racked up what the government can see is at least seven

1  felonies, violent crimes to include sexual assault with
2  intent to penetrate, assault on a prison employee, numerous
3  domestic violence convictions, albeit they were all
4  misdemeanors.  He also served a year in jail for fleeing and
5  eluding police officers.  And then, of course, there's a
6  previous felon in possession of firearm charges, and
7  previous distribution of crack cocaine charges.
8           He argues that he's no danger to the community,
9  but, Judge, all the evidence points to the exact contrary.
10 There are few things in this community these days that are
11 more dangerous than drugs and guns combined.  I know this
12 Court sees that on a daily basis.
13          When we look at factor (g)(3), Your Honor, the
14 history and characteristics, I've already pointed out a lot
15 of his previous history, but I'll also note that the
16 pretrial services report showed that there's been a failure
17 to show on pretrials previously.  He had a failure on
18 probation in 2001 and 2012, respectively.  He's had a
19 failure on supervised release, this offense, and he's had
20 failure to comply with the Sex Offender Registry Act in
21 Michigan.  Every time the court attempts to put conditions
22 on Mr. Roberson, he continues to thumb his nose at the
23 court, whether it be at the state level or the federal
24 level.
25          Lastly, Your Honor, when we look at conditions

1   (g)(4), the nature and seriousness of the danger presented
2   to the community, as I mentioned, there are few things these
3   days that are as inherently dangerous as firearms and drugs
4   being combined.  In this instance, it's even worse because
5   Mr. Roberson presents both a loaded firearm and narcotics
6   while he was under the influence of alcohol.  So he was
7   putting himself in danger by driving, he was putting his
8   friends in danger by driving the vehicle.  He put himself,
9   his friends, and the officers on scene in danger by having
10  those items on his person and not revealing that information
11  to the police officers.
12              And then, when he gets to the facility, he puts
13  all those folks in danger, to include all of the other
14  inmates.  God forbid he made it into a holding tank and that
15  firearm had ended up in the hands of another inmate, those
16  drugs.  Could have caused riots.  The amount of danger that
17  he put everyone including himself in, Judge, is an
18  astronomical level.
19              Not to mention, of course, the fact he says in
20  his motion to you that if he goes home and stays with his
21  mother he won't present a danger to the community.  Well,
22  what about the prior domestic violence offenses?  Your
23  Honor, I don't have any evidence to indicate whether it was
24  his mother that was the victim, or significant other, but
25  what domestic violence tells us is that he's a danger to

1  people who are close to him, whether it be a spouse, or
2  significant other, or family members.
3             Counsel puts in the motion that he could go
4  home, stay with his mother, and that would keep him out of
5  trouble.  However, Judge, the pretrial services report
6  indicates to us, on page 1, that Mr. Roberson had said that
7  he spent his entire life living with his mother, and she
8  confirmed that to pretrial services.  Well, then, why in 38
9  years has this gentleman racked up seven felonies and
10 multiple misdemeanors, and should this Court think that now
11 when he goes home to stay with his mother that he won't
12 commit anymore crimes?  I imagine that his mom has exhausted
13 all options to try and keep Mr. Roberson Jr. on the right
14 path, and she is probably fraught with regret, but she has
15 been unsuccessful, and there's nothing to indicate to us now
16 that she will be successful in helping him stay out of his
17 own way and stopping him from committing more law
18 violations.
19            Your Honor, Ms. Mannarino mentioned to you
20 specifically the amounts of drugs here.  7.6 grams of crack
21 cocaine, based on my training and experience as a drug
22 prosecutor in the state court, the average use "hit," shall
23 we say, of cocaine, is somewhere around half a gram, so
24 you're talking about 15 to 16 hits of crack cocaine.
25            As she said, there is no indicia of crack pipes

1  here, char boy, which is commonly used to ingest crack
2  cocaine, nothing.  There was no straws, there were no plates
3  with residue, there was nothing that indicated that there
4  was anything to be using the cocaine.
5           You take that, you combine that with the firearm
6  that Mr. Roberson had concealed on his person, you combine
7  that with the little over thousand dollars in cash  that he
8  had on his person; specifically, Judge, there was about $600
9  in $20 bills.  $20 is a common amount to buy what's called a
10 rock of crack cocaine.
11          Interestingly enough, Judge, police reports I
12 received yesterday from Mr. Roberson's 2012 conviction, as
13 I'm reviewing them, especially considering a 404(b) motion,
14 it was $20 rocks that Mr. Roberson told to a confidential
15 informant that he pled guilty to in federal court.  So
16 Judge, there's nothing to indicate this gentleman, despite
17 the efforts made, likely, by the Bureau of Prisons, and
18 probably by the counsel that Ms. Mannarino has given him in
19 the past, that he's changed his ways.
20          And because of the facts and circumstances and
21 all the factors that this Court, I know, will look at when
22 it's analyzing whether a revocation of this order to detain
23 is appropriate, you'll decide it's not, and he'll need to
24 stay where he is until we can resolve this matter.
25          THE COURT:  Thank you, Mr. Smith.

1         Mr. Roberson, is there anything you'd like to
2    say on your own behalf?
3         THE DEFENDANT: No, ma'am. I think my lawyer
4    spoke for me.
5         THE COURT: Thank you.
6         Ms. Mannarino, anything further?
7         MS. MANNARINO: No, I think I've made my
8    position clear. I appreciate what the prosecutor is saying,
9    but in this situation, I think we've got to go beyond these
10   mere allegations and look at, you know, realistically
11   whether this man can continue back in the community, perhaps
12   in need of some drug rehab.
13        But he kept -- you know, the money he had on
14   him, Judge, he had a well paying job. He was making over a
15   thousand dollars a week working for the last company he
16   worked with, American Soy, and had skills, was --
17        THE COURT: They paid him in cash?
18        MS. MANNARINO: Judge, you know, I had this
19   conversation with Mr. Roberson, and I was telling him, I
20   have $11 in my pocket right now. I don't carry cash, and I
21   think a lot of people don't. I will tell you the fact that
22   a lot of people carry cash on them, and I know the Court
23   knows people who do that. I know we know many attorneys who
24   like to keep, you know, a whole lot of cash on their person.
25   I don't know if it's a man thing or an attorney thing or --

1  there are people who find the feeling of power that comes
2  with having cash on them significant.  I personally don't
3  get it, you know, but I know other people who do.  And I
4  don't see that as some indicia of anything other than
5  maleness in most cases.
6              So I don't think that is significant.  I think
7  he pays over a thousand dollars a month in his mortgage
8  payments.  He, you know, he was out partying with his
9  buddies, he had some cash on him.  I don't see that as a
10 sign of drug sales.  I see that as a sign of a man who has
11 enjoyed a little bit of success in his work and doesn't mind
12 showing it.
13             I don't think -- and I have talked to his mother
14 and, you know, we see this all the time.  We see mothers
15 and -- I've had this conversation with his mother.  How do
16 you not, you know -- did you not see this?  How do you know?
17 I'll tell you, Judge, she is a smart woman, and what she
18 sees is that he was going to work every day, he was doing
19 well.  He and she had started a company, and I'm sorry I
20 don't have those with me, but I have the brochures they
21 created, the t-shirts they created, the list of the
22 equipment they had purchased and together were working
23 towards this business, something that he could be proud of
24 working with his mother.
25             So his mother -- obviously, she knows this is a

1  young man who has had his challenges, but she had seen the
2  progress he had made in the past four years. And so I
3  specifically asked her, if he comes back home and lives with
4  you, will you -- can you perform the duties of a third party
5  custodian? She was adamant that she would be more than
6  happy to call Pretrial or call the Court, or call anybody if
7  she saw signs of him not following the right path, because
8  he has worked so hard, because he has worked so hard, and
9  she was so hopeful that he was making progress, and he had
10 been, and he had a relapse.
11             THE COURT: Thank you.
12             MS. MANNARINO: And I -- thank you.
13             THE COURT: Thank you.
14             It really is too bad that Mr. Roberson had such
15 a major slip from the progress he was making, but the fact
16 that he was carrying that much cocaine and crack cocaine,
17 with a loaded gun concealed within his pants that didn't,
18 wasn't even discovered until he got to the police station,
19 is very serious.
20             And, of course, the most salient point is the
21 government's point that this is a presumption case. On two
22 different levels he is presumed to warrant detention unless
23 there is evidence presented which overcomes the presumption,
24 and frankly, although I'm pleased to see that he made some
25 progress and glad to know that his mother is supportive and

1  tries to help him out, there is nothing that overcomes the
2  presumption of detention in this case, and therefore I'm
3  going to deny the motion to revoke the order of detention.
4              Thank you.
5              MR. SMITH:  Thank you, Your Honor.
6              THE CLERK:  We're in recess.
7              (Proceedings concluded 1:54 p.m.)
8                            -  -  -
9
10                    **C E R T I F I C A T I O N**
11
12  I, Suzanne Jacques, Official Court Reporter for the United
13  States District Court, Eastern District of Michigan, Southern
14  Division, hereby certify that the foregoing is a correct
15  transcript of the proceedings in the above-entitled cause on the
16  date set forth.
17
18
19  s/Suzanne Jacques                            9/26/2022
    Suzanne Jacques, RPR, RMR, CRR, FCRR           Date
20  Official Court Reporter
    Eastern District of Michigan
21
22                            -  -  -
23
24
25